UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
                                                          :
PAMELA WALLACE,                                           :
                                    Plaintiff,            :
                                                          :            13 Civ. 6759 (LGS)
                  -against-                               :
                                                          :            OPINION & ORDER
GROUP LONG TERM DISABILITY PLAN FOR                       :
EMPLOYEES OF TDAMERTRADE HOLDING                          :
CORPORATION, et al.,                                     :
                                    Defendants.           :
-------------------------------------------------------------- X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:  8/11/15

LORNA G. SCHOFIELD, District Judge:

      Plaintiff Pamela Wallace brings suit under § 1132 of the Employee Retirement Income

Security Act ("ERISA"), alleging that Defendant The Hartford Life and Accident Insurance

Company ("Hartford") wrongfully denied her disability benefits under the terms of a long-term

disability ("LTD") plan funded by her former employer, TDAmeritrade Holding Corporation.

All parties cross-moved for summary judgment.  By the Opinion and Order dated March 26, 2015

(the "Opinion"), Defendants' motion for summary judgment was granted in part, and Plaintiff's

cross-motion for summary judgment was also granted in part.  The Clerk of Court entered

judgment on March 31, 2015, remanding the case to Hartford for further review of whether

Plaintiff's Obsessive Compulsive Disorder ("OCD") entitles her to LTD benefits.  By notices of

motion filed April 14, 2015, all parties moved for reconsideration and/or amendment.  Plaintiff

also moved for an award of attorneys' fees.  For the following reasons, Hartford's motion for

reconsideration is denied; Plaintiff's motion for reconsideration is denied; Plaintiff's motion for

clarification is granted; and Plaintiff's motion for attorneys' fees is granted in part and denied in

part.

      Familiarity with the Opinion, the underlying facts and procedural history is assumed.  *See*

*Wallace v. Grp. Long Term Disability Plan for Employees of TDAmeritrade Holding Corp.*, No.

13 Civ. 6759, 2015 WL 1402221 (S.D.N.Y. Mar. 26, 2015).  Capitalized terms not defined herein are defined in the Opinion.

## I.     MOTIONS FOR RECONSIDERATION

Defendants move for reconsideration pursuant to Local Civil Rule 6.3 and Plaintiff moves for reconsideration pursuant to Federal Rules of Civil Procedure 59(e) and 60(a).

### A.     Legal Standard

"The standards for relief under Rule 6.3 and Rule 59 . . . are identical."  *R.F.M.A.S., Inc. v. Mimi So*, 640 F. Supp. 2d 506, 508 (S.D.N.Y. 2009).  The standard is "strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked."  *Analytical Surveys, Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (citation and internal quotation marks omitted).  "A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Trust*, 729 F.3d 99, 104 (2d Cir. 2013) (citation and internal quotation marks omitted).  A motion for reconsideration is "not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a second bite at the apple." *Analytical Surveys*, 684 F.3d at 52 (citation and internal quotation marks omitted).

Under Rule 60(a), a court "may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record." Fed. R. Civ. P. 60(a); *see also In re Marc Rich & Co. A.G.*, 739 F.2d 834, 836 (2d Cir. 1984) ("Rule 60(a) permits the correction not only of clerical mistakes, but also of inadvertent errors arising from oversight or omission.") (internal quotation marks omitted).  This rule "allows a

court to clarify a judgment in order to correct a failure to memorialize part of its decision, to reflect the necessary implications of the original order, to ensure that the court's purpose is fully implemented, or to permit enforcement." *L.I. Head Start Child Dev. Servs., Inc. v. Econ. Opportunity Comm'n of Nassau Cnty., Inc.*, 956 F. Supp. 2d 402, 410 (E.D.N.Y. 2013) (internal quotation marks omitted).

The decision to grant or deny a motion for reconsideration, whether under Local Rule 6.3, Rule 59(e) or 60(a) rests within "the sound discretion of the district court." *See Aczel v. Labonia*, 584 F.3d 52, 61 (2d Cir. 2009) (citation omitted); *Metso Minerals, Inc. v. Powerscreen Int. Distribution Ltd.*, 297 F.R.D. 213, 217 (E.D.N.Y.), *aff'd sub nom. Metso Minerals Inc. v. Terex Corp.*, 594 F. App'x 649 (Fed. Cir. 2014).

### B.    Hartford's Motion

Hartford moves for reconsideration on the ground that the Opinion failed to address an argument raised in Hartford's motion papers -- that Plaintiff "did not satisfy her own independent burden to submit evidence demonstrating that she was under the 'Regular Care of a Physician' for OCD as required by the terms of the Plan." The motion is denied.

Hartford argues that Plaintiff bore the burden of demonstrating that she met the Plan's definition of "disabled," including that she was under the "Regular Care of a Physician." (Br. 5). The Plan explains that "'Regular Care of a Physician' means that [the claimant is] being treated by a Physician" (1) with appropriate training and experience (2) "as often as needed to achieve the maximum medical improvement," and that (3) the treatment is consistent with the diagnosis and (4) in accordance with "guidelines established by medical, research, and rehabilitative organizations." Hartford argues that because the record contains no evidence that Plaintiff met with any mental health professional between January 2011, and the termination of her benefits in

August 2012, Plaintiff failed to sustain her burden of showing that she was under the "Regular Care of Physician" for her OCD.

Hartford never invoked this ground for denial in either the initial or final determination terminating Plaintiff's LTD Benefits, and Plaintiff argues it may not do so at this stage.  Because the ERISA benefit plan in this case gives the administrator discretionary authority to assess Plaintiff's eligibility, the denial of benefits is "subject to the arbitrary and capricious standard on review."  *Wallace*, 2015 WL 1402221, at *16.  "[A] district court's review under the arbitrary and capricious standard is limited to the administrative record."  *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).  Several Circuit Courts have held that, when reviewing an administrator's decision under the arbitrary and capricious standard, an ERISA plan administrator may not rely on a reason for denial of benefits that it did not give during the administrative proceedings.  *See George v. Reliance Standard Life Ins. Co.*, 776 F.3d 349, 353 (5th Cir. 2015); *Harlick v. Blue Shield of California*, 686 F.3d 699, 719-20 (9th Cir. 2012); *Spradley v. Owens-Illinois Hourly Emps. Welfare Ben. Plan*, 686 F.3d 1135, 1140 (10th Cir. 2012).

The Second Circuit has not made clear whether the administrator is always barred from introducing new arguments on review when the court is applying an arbitrary and capricious standard.  Two Second Circuit cases, both applying the de novo standard of review, have declined to announce such a blanket prohibition.  In *Juliano v. Health Maint. Org. of New Jersey., Inc.*, the court held that where, as here, "the issue is existence or nonexistence of coverage, the issue of waiver is simply inapplicable" and the plan administrator was allowed to raise such an argument for the first time in the motion papers.  221 F.3d 279, 288 (2d Cir. 2000) (quoting *Albert J. Schiff Assocs., Inc. v. Flack*, 51 N.Y.2d 692, 698 (1980)).  However, because "an administrator's failure to inform a member of a reason for denial deprives the member of the ability to make a contrary

4

case to the administrator," the court held that "in performing *de novo* review, the district court . . . could not decide the case solely on the basis of the failure of the evidence in the administrative record." *Id.* Instead, the court concluded that a court is "within its discretion in admitting additional evidence on that issue" if it appears dispositive. *Id.* at 289. In *Lauder v. First Unum Life Ins. Co.*, the court explained that after *Juliano*, the issue of whether a plan administrator had waived a defense by failing to raise it during the administrative proceeding required a "case-specific analysis." 284 F.3d 375, 381 (2d Cir. 2002). The court emphasized that a claim of waiver should not be used to "expand the coverage of that policy." *Id.*

Here, Hartford argues that it properly denied Plaintiff's claim for benefits based on OCD because she did not show that she was under the "Regular Care of a Physician" as required by the Plan. To deem this defense waived and "thereby allow Plaintiff to recover without proving an essential element of her claim under the policy, would improperly expand the coverage of that policy." *See id.* Accordingly, Plaintiff's contention that Hartford may not raise this argument for the first time in its motion papers is rejected.

That said, under the arbitrary and capricious standard of review, Hartford's argument is ultimately unavailing. Unlike in *Juliano*, here, the standard constrains review to the administrative record. At most, the record suggests that Plaintiff did not visit a mental health specialist as often as a layperson might expect of someone who has OCD. The record, however, says nothing about whether Plaintiff satisfied the definition of "Regular Medical Care" in the Plan. In particular, it is unclear whether, of Plaintiff's numerous physicians, only her psychiatrist Dr. Sherman had the necessary training and experience to treat her OCD, whether her medical care for OCD met the medical community's norms, and whether she sought treatment as often as needed for her condition. Because Plaintiff was never given a chance to develop the record on

this issue and nothing beyond the record may be considered, Hartford is not entitled to a determination that Plaintiff did not meet her burden "solely on the basis of the failure of the evidence in the administrative record." *Juliano*, 221 F.3d at 288. Indeed, it is highly unlikely that when the arbitrary and capricious standard of review applies, a court could ever rule against the claimant based on an argument the plan administrator did not raise in the administrative proceedings.[1]

Because Hartford's argument, even if not addressed in the Opinion, would not have changed the outcome, *see Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995), its motion for reconsideration is denied.

### C.     Plaintiff's Motion for Reconsideration

Plaintiff advances three grounds for amendment and/or reconsideration. First, she asks the Court to amend the Opinion and direct Hartford to consider the effect of all her psychiatric and medical conditions in a holistic manner on remand. Second, she seeks "clarification" that on remand the parties will be allowed to supplement the record. Third, she asks for a ruling on her argument raised in her motion papers but not addressed in the Opinion -- that her LTD benefits should be reinstated. The first two requests seek clarification of the original order, and are accordingly analyzed under Rule 60(a). The motion is granted to "to reflect the necessary implications of the original order." *L.I. Head Start Child Dev. Servs., Inc.*, 956 F. Supp. 2d at 410 (internal quotation marks omitted). The third argument seeks reconsideration under Rule 59(e), and motion is rejected because Plaintiff has failed to point to any overlooked controlling decisions or other evidence.

---

[1]     To develop the record on this issue on remand, Hartford may allow Plaintiff an opportunity to introduce evidence showing that she was in "Regular Medical Care" for her OCD before her benefits expired.

First, the Opinion remanded the case to Hartford for a review of its initial denial limited to consideration of Plaintiff's OCD claim.  Under that order, Hartford must necessarily consider all medical information relevant to a determination of whether Plaintiff's OCD was disabling, including what Plaintiff calls her "co-morbid conditions."  Here, Plaintiff's psychiatrist indicated on two different occasions that Plaintiff's OCD is exacerbated by her fibromyalgia.  *See Wallace*, 2015 WL 1402221, at *5 (In a February 2011 APS, Dr. Sherman "explained that stress exacerbates Plaintiff's OCD, and that following her foot injury and its attendant stress, starting in December 2010, Plaintiff's '[c]ontamination fears and rituals became disabling.'"); *id.* at *13 (In a February 2013 letter, Dr. Sherman "wrote that Plaintiff's pain increases her OCD symptoms.").  Although Hartford's IPC physicians -- Dr. Ash, a rheumatologist, and Dr. Lurie, a psychiatrist -- "both agreed that symptoms of OCD do not cause somatization or exacerbate fibromyalgia symptoms," *id.* at *14, the Opinion held that Hartford's reliance on Dr. Lurie's analysis was arbitrary and capricious.  Accordingly, any evidence of comorbidity on Plaintiff's OCD is necessary and relevant evidence that must be considered on remand.

Second, to allow a "full and fair" review on remand, Hartford shall allow Plaintiff to supplement the record with any medical records she believes would be relevant to showing that her OCD was disabling before her LTD benefits were terminated.  It is well established that "if upon review a district court concludes that the [plan administrator's] decision was arbitrary and capricious, it must remand to the [plan administrator] with instructions to consider additional evidence unless no new evidence could produce a reasonable conclusion permitting denial of the claim."  *Miller v. United Welfare Fund*, 72 F.3d 1066, 1071 (2d Cir. 1995).  Because Plaintiff may be able to submit evidence showing her entitlement to LTD benefits because of her OCD, as result of the remand, Hartford is required to allow Plaintiff to submit additional evidence.  The

7

Court further clarifies that "[a]s a matter of 'full and fair' review" on remand, "prior to any final determination denying benefits, [Hartford] shall disclose to [Plaintiff], for an opportunity to respond to or rebut, the information upon which it expects to base its decision, to the extent such information was not previously disclosed." *Palmiotti v. Metro. Life Ins. Co.*, 423 F. Supp. 2d 288, 302-03 (S.D.N.Y. 2006). As noted above, Hartford may also require Plaintiff to submit evidence showing that she met the requirement of having "Regular Medical Care" for OCD as required by the Plan.

Third, Plaintiff has pointed to no controlling decisions that require that Plaintiff's disability benefits be reinstated pending Hartford's "full and fair" review. Plaintiff's primary authority is *Zurndorfer v. Unum Life Insurance Company of America*, 543 F. Supp. 2d 242 (S.D.N.Y. 2008), a district court case, which is not controlling and is inapposite. The court in that case reinstated the claimant's award *instead of* remanding the case to the plan administrator. The court framed the issue as "*whether* plaintiff is entitled to reinstatement of her benefits . . . *or whether* the Court should remand the case to the administrator for renewed evaluation of plaintiff's claims," and concluded that remand was "inappropriate" because "there was not substantial evidence before the administrator to justify termination of benefits." *Id.* at 263 (emphases added). Here, no determination has been made as to the sufficiency of the evidence. In such a situation, remand is the appropriate procedure. *See Miller*, 72 F.3d at 1071. Plaintiff also cites four out-of-circuit cases, none of which are controlling or require reconsideration here.

Accordingly, with the clarifications above, reconsideration of the Opinion is denied.

8

## II.     ATTORNEYS' FEES

### A.     Legal Standard

Under ERISA, "[i]n any action under this title . . . by a participant, beneficiary, or fiduciary, the court in its discretion may allow a reasonable attorney's fee and costs of action to either party."  29 U.S.C. § 1132(g)(1).  "ERISA's attorney's fee provisions must be liberally construed to protect the statutory purpose of vindicating [covered] rights."  *Locher v. Unum Life Ins. Co. of Am.*, 389 F.3d 288, 298 (2d Cir. 2004).

In *Hardt v. Reliance Standard Life Ins. Co.*, the Supreme Court held that an ERISA "fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees."  560 U.S. 242, 255 (2010).  "After *Hardt*, whether a plaintiff has obtained some degree of success on the merits is the sole factor that a court *must* consider in exercising its discretion." *Donachie v. Liberty Life Assur. Co. of Boston*, 745 F.3d 41, 46 (2d Cir. 2014).  In other words, once a court determines that a plaintiff has achieved some degree of success on the merits, it is not required to, but *may* in its discretion, consider other factors in determining whether to award attorneys' fees.  *See id.*[2]

"A claimant does not satisfy [the some success on the merits] requirement by achieving 'trivial success on the merits' or a 'purely procedural victory,' but does satisfy it if the court can fairly call the outcome of the litigation some success on the merits without conducting a 'lengthy inquiry into the question whether a particular party's success was 'substantial' or occurred on a

---

[2]     The remaining factors sometimes considered, called the "*Chambless* factors," are: (1) the degree of opposing parties' culpability or bad faith; (2) ability of opposing parties to satisfy an award of attorneys' fees; (3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances; (4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and (5) the relative merits of the parties' positions.  *Donachie*, 745 F.3d at 46 (citing *Chambless v. Masters, Mates & Pilots Pension Plan*, 815 F.2d 869, 871 (2d Cir. 1987)).

9

'central issue.'" *Hardt*, 560 U.S. at 255 (quoting *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 688 n.9 (1983)).

Once a court determines that a party is entitled to attorneys' fees, it must determine whether the requested amount is reasonable. *See Taaffe v. Life Ins. Co. of N. Am.*, 769 F. Supp. 2d 530, 542 (S.D.N.Y. 2011). To determine the amount of attorneys' fees a party may recover, a court must calculate the "presumptively reasonable fee," previously referred to as the "lodestar." *Arbor Hill Concerned Citizens Neighborhood Ass'n v. Cnty. of Albany*, 522 F.3d 182, 183, 189-90 (2d Cir. 2008); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 554 (2010) ("[T]here is a 'strong presumption' that the lodestar figure is reasonable . . . ."). The "lodestar" is calculated by multiplying the reasonable number of hours that the case requires by the reasonable hourly rates. *Millea v. Metro-North R.R. Co.*, 658 F.3d 154, 166 (2d Cir. 2011); *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989). The movant bears the burden to submit sufficient evidence to support the hours worked and the rates claimed. *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

"In determining what fee is reasonable, the court takes account of claimed hours that it views as excessive, redundant, or otherwise unnecessary" and "may look to its own familiarity with the case and its experience generally as well as to the evidentiary submissions and arguments of the parties." *Bliven v. Hunt*, 579 F.3d 204, 213 (2d Cir. 2009) (internal quotation marks omitted). "A reasonable hourly rate is a rate 'in line with . . . prevailing [rates] in the community for similar services by lawyers of reasonably comparable skill, expertise and reputation.'" *McDonald ex rel Prendergast v. Pension Plan of the NYSA-ILA Pension Trust Fund*, 450 F.3d 91, 96 (2d Cir. 2006) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n. 11 (1984)).

### B.      Facts

Plaintiff is represented by Mark Schrezer and A. Christopher Wieber. Mr. Schrezer graduated from law school in 1978 and was admitted to the New York State Bar and the Bar of this this Court in 1979.  Since 1981, Mr. Schrezer's practice has focused on representing individuals with serious illnesses.  By his estimate, Mr. Scherzer has represented at least 750 individuals in ERISA administrative proceedings and 150 in litigation.  Mr. Wieber graduated from law school in 1987 and was admitted to the New York State Bar in 1988.  Mr. Wieber has worked at Mr. Schrezer's law offices since 1992 and has been fully involved in all aspects of the practice.

The records reflect that Mr. Schrezer billed his time at an hourly rate of $450 for 197 hours of work, and Mr. Wieber billed $375 per hour for 125.60 hours of work.  The documented fees and expenses on this case -- including for work done for Plaintiff's internal appeal at Hartford -- total $136,104.64.

### C.      Application

By procuring a remand for further consideration of whether her OCD is disabling, Plaintiff has achieved an adequate degree of success on the merits to warrant attorneys' fees.  *See, e.g.*, *Gross v. Sun Life Assur. Co. of Canada*, 763 F.3d 73, 77 (1st Cir. 2014) (After *Hardt*, "[m]ost courts considering the question . . . have held that a remand to the plan administrator for review of a claimant's entitlement to benefits, even without guidance favoring an award of benefits or an actual grant of benefits, is sufficient success on the merits to establish eligibility for fees under section 1132(g)(1).") (collecting cases).  Having concluded that Plaintiff has achieved some degree of success on the merits, the Court declines to consider other factors in reaching this conclusion.

As an initial matter, the hourly rates charged by Plaintiff's attorneys -- to which Hartford does not object -- are approved as reasonable.  Mr. Scherzer has practiced in this area for 34 years, and Mr. Wieber has practiced for 23 years.  Their briefing on all issues has been comprehensive, reliable and helpful.  Further, their requested hourly rates are in line with rates approved for experienced ERISA counsel in this District.  *See, e.g.*, *Levitian v. Sun Life & Health Ins. Co. (U.S.)*, No. 09 Civ. 2965, 2013 WL 3829623, at *8 (S.D.N.Y. July 24) ("$600 per hour rate is reasonable" for ERISA attorney with 20 years experience and $340 reasonable for attorneys with more than 5 years), *report and recommendation adopted*, 2013 WL 4399026 (S.D.N.Y. Aug. 15, 2013); *Barnes v. Am. Int'l Life Assur. Co. of New York*, No. 08 Civ. 06222, 2010 WL 1253742, at *3 (S.D.N.Y. Mar. 16, 2010) ($495 reasonable rate for attorney with 20 years of ERISA experience) (collecting cases).

Based on a careful review of the billing records submitted in connection with this motion, the hours worked are also approved as reasonable.  As Mr. Scherzer acknowledges in his affidavit in support of the motion, a large number of hours (56.6) were spent negotiating and finalizing the parties' extensive Rule 56.1 statement of uncontested facts submitted in connection with the cross-motions for summary judgment.  The parties' Rule 56.1 statement spanned 66 pages and contained 518 facts.  The detailed 56.1 statement was central to the Court's determinations on summary judgment, and the hours spent negotiating it will not be reduced.

Hartford objects that, because Plaintiff achieved remand on a single ground and the Opinion affirmed Hartford's decisions in every other respect, only the hours worked on Plaintiff's OCD claim should be included in any attorneys' fees award.  Instead, a 50% across-the-board reduction will be applied to take into account Plaintiff's limited success.  *See Scarangella v. Grp. Health, Inc.*, 731 F.3d 146, 156 n.14 (2d Cir. 2013) (recognizing that the Second Circuit "allows

12

reductions in attorney's fees based on partial success, so long as the reduction is not mathematically based solely on the number of claims won or lost").

Finally, the costs -- as distinct from the fees -- are approved as reasonable.  Hartford has not contested the costs as unreasonable.

Accordingly, Plaintiff is entitled to 50% of $135,637.50, i.e., $67,818.75, in attorneys' fees, and $467.14 in costs for a total of $68,285.89.

## III.   CONCLUSION

For these reasons, Hartford's motion for reconsideration is DENIED.  Plaintiff's motion for reconsideration is DENIED.  Plaintiff's motion for amendment and/or clarification pursuant to Rule 60(a) is GRANTED.  Plaintiff's motion for attorneys' fees is GRANTED in part.  Plaintiff is entitled to $68,285.89 in attorneys' fees and costs.

The Clerk of Court is directed to amend the judgment to reflect that, on remand, Hartford must consider all relevant evidence regarding Plaintiff's claim of OCD as further provided in this Opinion.

The Clerk of Court is directed to close the motions at Dkt. Nos. 71, 73 and 76.

SO ORDERED.

Dated: August 11, 2015
       New York, New York

**LORNA G. SCHOFIELD**
**UNITED STATES DISTRICT JUDGE**